# Appeal of Miskimins *et al.*

1. The Orphans' Court has exclusive jurisdiction of the property of a decedent that comes into the hands of an administrator by virtue of his office, of the sale of real estate for the payment of debts, the distribution of assets, the settlement of the accounts of an administrator including the fixing of the amount of compensation for his services, and has power to dispose of every question that arises in the determination of matters within its jurisdiction.

2. A decedent at the time of his death owned personal property and two tracts of real estate, and was indebted to divers persons; two of his debts were secured by mortgages on one tract of his real estate. The estate was more than sufficient for the payment of the debts and expenses of administration. The administrator sold the personalty and, by order of court, the unmortgaged tract of real estate. He paid the debts secured by the mortgages and had them satisfied; he also paid all of the debts of the estate except about $2,000, and the expenses of the administration. He obtained an order to sell the other tract of real estate for the payment of this indebtedness and the expenses of administration. He suffered five years to elapse from the date of the death of the decedent, without executing the order of sale or having it continued or applying for a second order of sale. He filed no account. Nearly six years after the death of the decedent, the administrator filed his bill in equity praying for a decree vacating and cancelling the satisfaction of said mortgages; and subrogating him to the rights of the mortgagee, as

they existed prior to the satisfaction of the mortgages. *Held* that if the administrator was entitled to relief the Orphans' Court had exclusive jurisdiction in the matter and the bill should be dismissed.

November 2d, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. MERCUR, C. J. and CLARK, J., absent.

APPEAL from the Court of Common Pleas, No. 2, of *Allegheny county :* of October Term 1886, No. 140.

·Appeal of Priscilla G. Miskimins and others from the decree of said court vacating and cancelling the satisfaction of two mortgages, and subrogating Charles A. Warmcastle administrator of the estate of William Miskimins deceased, to the rights of the mortgagee.

The facts as they appeared in the court below sufficiently appear in the opinion of the Supreme Court.

*J. McF. Carpenter (J. S. Strickler* with him) for appellants. —The Orphans' Court has exclusive jurisdiction of this case if the administrator be entitled to the relief prayed for: Blank's Appeal, 3 Grant, 192; Pry's Appeal, 8 Watts, 253; McCurdy's Appeal, 5 W. & S., 399; Sheffey's Appeal, 1 Out., 317; Musselman's Appeal, 15 P. F. S., 480; Loomis *v.* Loomis, 3 Casey, 332; Demmy's Appeal, 43 Pa. St., 155; Cobaugh's Appeal, 24 Pa. St., 143; Whiteside *v.* Whiteside, 8 Harris, 473; Dunda's Appeal, 23 P. F. S., 495; Kellere's Estate, 5 Harris, 422.

*James S. Young ( W. H. McClurg* with him) for appellee.— The jurisdiction of the Orphans' Court depends entirely on the Act of June 16th, 1839.

There is no fund in court and the subrogation sought is not incidental to an Orphans' Court audit. The bill seeks only to insure a fund which may be brought in for distribution—to restore the mortgages as security for the payment of such debts and expenses as may be ascertained by the Orphans' Court, when a fund for distribution is before that tribunal.

But conceding that the Orphans' Court might by any possibility have jurisdiction in this case, were a fund in court for distribution, it does not follow that such jurisdiction would be exclusive. On the contrary it is held that " equity exercises its most appropriate function when it removes out of the way of the Orphans' Court an obstruction constantly occurring to hinder and delay distribution ": Campbell's Appeal, 30 P. F. S., 314.

The right of subrogation proceeds upon the broad ground of equity and benevolence and requires neither contract nor privity to awake it into action as an equitable remedy. Kyner

*v.* Kyner, 5 Watts, 225; Wallace's Appeal, 5 Barr; Williamson's Appeal, 13 Norris; Ackerman's Appeal, 10 Outerbridge, 1.

It is a mode which equity adopts to compel the ultimate discharge of the debt by him, who in equity and good conscience ought to pay it. McCormick *v.* Irwin, 11 Casey, 111.

The right to subrogation seems clear, and the formal entry of satisfaction does not preclude us from claiming it.

The right of subrogation having been found to exist it was certainly proper on the part of the court to decree that the entry of satisfaction should be cancelled and that the judgment should stand for the use of the plaintiffs in the bill: Mosier's Appeal, 6 Smith, 76; Levy *v.* Martin, 48 Wisconsin, 198; Pomeroy's Equity, sec. 1211–12.

Whenever a trust fund has been wrongfully converted into another species of property, if its identity can be traced, it will be held in its new form liable to all the rights of the *cestui que trust.* No change of its state and form can divest it of such trust: Thompson's Appeal, 10 Harris, 16; Story's Equity, vol. 2, sec. 1258.

The power of a court of equity to follow trust assets whenever they can be traced into the hands of other parties, taken with notice of the trust, and compel their application or restoration, is clear: Brightly's Equity, sec. 322; Harrisburg Bank *v.* Tyler, 3 W. & S., 377.

Mr. Justice TRUNKEY delivered the opinion of the court November 15th, 1886.

William Miskimins died April 27th, 1879, and letters of administration of his estate were granted to Charles A. Warmcastle on the 9th of June following. At the time of his death the decedent owned real and personal estate, was indebted to divers persons, and two of his debts were secured by mortgages; his estate was more than sufficient for the payment of his debts and expenses of administration. The administrator sold the personalty, and by order of the Orphans' Court sold one of the tracts of land, from both sales securing $9,119.25. He paid the debts secured by the mortgages and purposely had them satisfied on the record. He paid other debts so that the sum of all payments nearly equalled the sum of the trust money that had come into his hands; leaving about $2,000 of indebtedness unpaid, to which would be added the expenses of settling the estate. The tract of land remaining unsold contained two hundred and sixty acres and was worth $12,000. On June 23d, 1883, the administrator obtained from the Orphans' Court an order for the sale of this land, returnable July 28th, 1883; but he did not sell, and has made no return of the order. By inadvertence he suffered five years to elapse

from the date of the decedent's death, without executing said order of sale; nor has he applied for a continuation of the order, or for a second order of sale. He has filed no account; but he filed this bill nearly six years after the death of William Miskimins.

The Orphans' Court has exclusive jurisdiction of the settlement of the accounts of an administrator, including the fixing of the amount of compensation for his services; also of the distribution of assets; and also for the sale of real estate of a decedent for the purpose of paying debts. Even an execution on a judgment shall be stayed, if any interested person shows to the court issuing such execution that the personal assets are insufficient to pay all just demands upon the estate; and if the administrator do not voluntarily make application for an order for sale, he may be compelled to do so by the mandate of the Orphans' Court. It is often, though not properly, named a court of equity; and upon the principles in equity, may dispose of every question that arises in the determination of matters within its jurisdiction. It has power to prevent, by order in the nature of writs of injunction, acts contrary to law or equity, prejudicial to property over which it has jurisdiction.

The plaintiff in this action is trustee of all the property of the estate that comes into his hands by virtue of his office, and the Orphans' Court alone has jurisdiction of such property, and of his management and conduct in the settlement. He invoked its authority for sale of the real estate. We do not assent to the view of the Master and court below that "no duty rested upon him to apply to the Orphans' Court for an order to sell real estate for the payment of debts"; on the contrary, under the circumstances, he was strictly in the line of his duty when he did apply for such order. The larger tract remains unsold by his own neglect—he may have had profound deference for the wishes of the widow and heirs, but no trick or fraud practiced by them induced his delay. By his own showing there is lawful cause for sale or mortgage of real estate for payment of some liabilities, even if the lien of certain debts is lost. Why should he go into another court for a decree of subrogation to the rights of a creditor to a debt which he paid and satisfied? The Orphans' Court can dispose of that question in the disposition of questions then pending before he filed this bill. No other court can determine whether anything is due him for which he ought to have the security of the mortgages.

In many cases the Court of Common Pleas and the Orphans' Court have concurrent jurisdiction, and the plaintiff contends it is so respecting the matter of this bill, if it be conceded that

the Orphans' Court has power to determine it: Campbell's Appeal, 80 Pa. St., 298. In that case the plaintiff was the widow, the executors and legatees defendants, and she prayed a decree that post-nuptial settlements made with her husband were void for fraud, and decree was made accordingly. She had no settlement to make in the Orphans' Court, and had begun no proceeding there. "The decree itself shows that no matter of settlement or touching the administration of the estate was drawn within the power of the Common Pleas. No power of the Orphans' Court was trenched upon." Then, a person interested in the estate, occupying no trust relation, in the first instance, moved a court of concurrent jurisdiction to declare void a fraudulent instrument made in the decedent's lifetime, which, if not removed out of the way, would have been an obstruction constantly occurring in the Orphans' Court to hinder or delay distribution. But here is a trustee under the exclusive control of the Orphans' Court, where proceedings are pending founded on his petition setting forth the same debts and expenses as are set forth in the bill, stepping into another court to get a decree putting a new face on a portion of his own conduct of the trust.

We are not unmindful of the contention, supported by specious argument, that this is a creditor's bill, and that creditors, using the name of the trustee, are now seeking to avoid the misuse of trust funds. As if authority for this, are cited Harrisburg Bank *v.* Tyler, 3 W. & S., 387; Thompson's Appeal, 22 Pa. St., 16; Kirkpatrick *v.* McDowell, 11 Id., 393; Abbott's Ex's *v.* Reeves, 49 Id., 494. These cases illustrate the application of familiar principles, as where a trust fund has been wrongfully converted into another species of property, if its identity can be traced, it will be held in its new form, liable to the rights of the *cestui que trust,* unless there be a superior equity in a bona fide purchaser without notice; and securities belonging to a trust estate, loaned by a trustee to another, may be recovered. But no case is referred to showing that where an executor or administrator paid a debt owing by the decedent, that either he, or other creditors, could recover back the whole or a part of the money. And we are advised of no principle in morals or equity, in case of the voluntary payment of a debt by the administrator of a solvent estate, that would require the creditor to refund the money.

This bill appears to be purely in the interest of the administrator for his own relief in a matter immediately connected with the performance of his trust duties. In our opinion the jurisdiction of the Orphans' Court is exclusive. In most cases where the Orphans' Court has jurisdiction of subrogation, it may be conceded that there is concurrent jurisdiction

[Bidwell v. P., O. & E. L. Pass. R. R. Co.]

in the Court of Common Pleas. Nor do we say that cases may not arise where an administrator will be entitled to equitable relief in the latter court. Under the facts presented, it is clear that if the plaintiff is entitled to relief it can be properly measured and applied by the only competent tribunal for determining every question touching the administration.

But were it doubtful whether the Court of Common Pleas could entertain the bill, the doubt should be resolved against the plaintiff. No good can come by permitting an executor or administrator, in a matter springing from his conduct of the trust duties, and which concerns only himself and those entitled to share in the estate, when proceedings are pending in the Orphans' Court, to seek relief in a court which has no control over the trust, and no jurisdiction of his accounts.

We do not intend to indicate any opinion upon the merits of the plaintiff's claim.

> Decree reversed, and bill dismissed at the costs of the appellee, Charles A. Warmcastle, including costs of appeal. Record remitted.